UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH JABIR POPE,<br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON; and Former Boston Police Detectives and/or Officers, PETER J. O'MALLEY, JAMES T. CURRAN & ROBERT FLYNN, *in their individual* Capacities, as well as-yet-unknown Boston Police Officers and/or Supervisors JOHN And JANE DOES 1 THROUGH 20,<br>Defendants | Civil Action No. 1:24-CV-10980-DJC |

**THE CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS</u>**

The City of Boston submits this memorandum of law in support of its Motion to Dismiss Counts I of the Plaintiff's Complaint. In brief, the City argues that the Plaintiff has failed to allege sufficient facts to meet the Fed.R.Civ.P. 12(b)(6) requirement of pleading more than mere "labels and conclusions." The allegations in Count 1 of the Plaintiff's Complaint fail to meet the strict "deliberate indifference" standard required by <u>Monell</u> and its progeny, and does not sufficiently allege a pattern of constitutional violations to show that the municipality knew or should have identified a general or persistent deficiency in officer training or supervision. With respect to Count 7, a state-law claim of negligent supervision, the Plaintiff failed to satisfy the presentment requirements of the Massachusetts Tort Claims Act. Finally, Count 12 fails because *Respondeat Superior* is not a valid basis for a § 1983 claim. For these reasons, and those discussed below, the City respectfully requests that the Court dismiss each of those counts.

1

## Relevant Procedural and Factual Allegations[1]

On May 25, 1984, the Plaintiff was arrested for the shooting death of Efrain DeJesus, which had occurred two days earlier.[2] On July 2, 1986, the Plaintiff was convicted of first-degree murder and armed robbery.[3] The Plaintiff was sentenced to life in prison without the possibility of parole for the murder conviction, and eight to ten years for the armed robbery conviction.[4] In June of 2022, the Supreme Judicial Court ordered a new trial.[5] On October 24, 2022, the Commonwealth filed a *nolle prosequi*.[6]

The Plaintiff alleges that the named Defendant Officers fabricated, withheld, and destroyed evidence, induced false testimony, suppressed statements that were legally required to provide to the defense, deliberately failed to investigate actual perpetrators, assisted potential exculpatory witnesses in being unavailable to testify, and engaged in improperly suggestive identification procedures.[7]

Further, he alleges that the City of Boston's policies, customs, and practices of fabricating evidence and then suppressing exculpatory evidence of that fabrication was the moving force behind the alleged constitutional violations.[8]

---

[1] Except where otherwise noted, all facts cited in this motion to dismiss are taken from Plaintiff's Complaint. The City makes no admission with respect to these factual allegations, but rather simply contends that these facts fail to give rise to an actionable claim against it.
[2] Plaintiff's Complaint at ¶ 41.
[3] Id. at ¶ 25.
[4] Id.
[5] Id. at ¶ 8.
[6] Id. at ¶ 9.
[7] Id. at ¶ 1.
[8] Id. at ¶¶ 1, 43-44.

**RELEVANT LAW**

I.   **RULE 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombley, 550 U.S. at 557). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678-679.

Courts considering motions to dismiss in civil rights actions "should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Id. (internal quotation omitted). While the First Circuit recognizes the importance of § 1983, it is also "aware of the impact of its misuse" and thus requires a § 1983 claimant to "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st. Cir. 1982). Thus, in order to survive this motion to dismiss, the facts contained in the Plaintiffs' Complaint must have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 569. For the reasons set forth herein, Plaintiff's claims against the City fail to accomplish this goal.

## II.    42 U.S.C. § 1983

### a.  "Monell" Standard

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  In deciding Monell, the Supreme Court has set a very high bar for assessing municipal liability." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

To prove municipal liability under § 1983, a Plaintiff must show:

(1) an unconstitutional policy or custom of the City, **and**

(2) that this policy or custom was "the moving force" behind the alleged injury.

See Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997), 520 U.S. at 403-05.

### b.  Proving the Unconstitutionality of a Policy or Custom Requires a Showing of "Deliberate Indifference"

In order to satisfy prong (1) of the Brown test, the Plaintiff must show that these alleged policies or customs are unconstitutional.  To do so, the Plaintiff must show that said policies and customs "amount to deliberate indifference to the rights of persons with whom [its officers] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011). Only where the City's alleged failure "reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." City of Canton v. Harris, 489 U.S. 378, 389 (1989).

A Plaintiff must show that City officials behaved in a manner that "could be characterized as supervisory encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate indifference." Lipsett v. Univ. of Puerto Rico, 864 F. 2d 811, 902 (1988). "[P]roof of mere negligence, without more, is inadequate." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) (deliberate indifference "describes a state of mind more blameworthy than negligence" … and is often equated with "recklessness"). A less stringent standard of fault "would result in de facto respondeat superior liability on municipalities," which is not appropriate. Connick v. Thompson, 563 U.S. 51, 62 (2011).

### c.  Failure to Train

The Plaintiff first claims that the City has a custom and policy of failing to properly train its officers, such that it rises to the level of a §1983 violation. "The liability criteria for 'failure to train' claims are exceptionally stringent...." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.1998). A showing of "deliberate indifference" typically requires showing "a pattern of **similar** constitutional violations," or circumstances in which the "need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." Hill v. Walsh, 884 F.3d 16, 24 (1st Cir. 2018) (emphasis added); see also Harris, 489 U.S. at 390; Connick, 563 U.S. at 64. "It is not enough to show that the [municipality's] training regimen was faulty; [a plaintiff] must also show that the [municipality] knew or had reason to believe that such a regimen had unconstitutional effects." Gray v. Cummings, 917 F.3d 1, 14 (1st Cir. 2019). As the U.S. Supreme Court has held, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).

This is generally done by offering evidence of "past violations sufficient to put the [city] on notice of such effects." Gray, 917 F.3d at 14. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 563 U.S. at 62. Relying on the facts of the case at hand alone is not sufficient to support a municipal liability claim. See Aaron v. City of Lowell, 2022 WL 2953033, at *2 (D. Mass. Jul. 26, 2022).

Further, deliberate indifference requires notice—an official cannot make a deliberate choice "unless confronted with a problem that requires the taking of affirmative steps." Lipsett, 864 F. 2d at 902. It is only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, [that] the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61.

### d. Failure to Supervise or Discipline

The Plaintiff's allegation that the City has a custom and policy of failure to supervise and discipline its officers that rises to a § 1983 violation. This, too, necessarily fails to survive a Rule 12 motion.

Failure-to-supervise claims are subject to the same stringent standard as failure-to-train claims. See Rodriques v. Furtado, 950 F.2d 805, 813 (1st. Cir. 1991); Consolo v. George, 835 F. Supp. 49, 51 (D. Mass. 1993) ("Although the Supreme Court cases only discuss failure to train claims, this Court has held that the same standard is equally applicable to failure to supervise claims"). As such, the existence of customs or policies relating to failure-to-supervise are

generally proven by a history or pattern of documented failures, sufficient to have put the municipality on notice.

Failure-to-discipline claims, too, are subject to a nearly identical standard requiring a history or pattern of failures. "In order to establish liability under a failure to discipline theory, the Plaintiff must show a persistent failure to discipline that demonstrates the existence of a custom or policy of Boston." Barker v. City of Bos., 795 F. Supp. 2d 117, 124–25 (D. Mass. 2011) (citing Burke v. Town of Walpole, No. 00–10376, 2003 WL 23327539, at *13 (D.Mass. Aug. 5, 2003). A single failure to discipline is not sufficient to establish municipal liability under Monell. Id. (citing Oklahoma v. Tuttle, 471 U.S. 808, 823–24).

Relying on the facts of the case at hand alone is not sufficient to support a municipal liability claim. Even if officers had not been subsequently disciplined, pointing to such a fact is not sufficient to support a "pattern of activity." Id. (citing Aaron v. City of Lowell, 2022 WL 2953033, at *2 (D. Mass. Jul. 26, 2022)).

## ARGUMENT

### General Allegations

The Plaintiff alleges witness Benny DeJesus ("BD"), the brother of the victim, changed his account of the events of May 23, 1984 throughout the course of the investigation,[9] that Detective O'Malley did not believe BD's story, and instead believed that BD was a drug dealer.[10] He alleges that the Defendant Officers protected BD by declining to investigate or prosecute him even though they knew that BD was dealing drugs in his home.[11]

---

[9] Id. at ¶ 44.
[10] Id. at ¶ 37.
[11] Id. at ¶ 45.

To support these allegations, the Plaintiff points to a memo authored by ADA Robert Goodale, which was never produced to the defense during the criminal trial, and which was the basis for the 2022 order for a new trial. The sole relevant line of the Goodale memo indicates that Detective O'Malley did not believe BD's assertions that he was not a drug dealer.[12]

### A. Count 1 – *Monell* Liaiblity against the City

Count 1 of the Plaintiff's Complaint alleges § 1983 Monell liability against the City of Boston. The Plaintiff alleges that the City had notice of a widespread practice by its officers that individuals suspected of criminal activity were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were their liberty without probable cause, such that individuals were routinely implicated in crimes they had no connections with.[13] The Plaintiff continues by alleging that the City "directly encouraged and were thereby the moving force behind the type of misconduct at issue by failing to adequately supervise, train, and discipline their officers and employees who withheld material evidence fabricated false evidence and witness testimony, and pursued wrongful prosecutions and convictions."[14] Further, the Plaintiff alleges that "it was the policy of the City of Boston to allow the defendant officers and other members of the police department to ignore laws, rules, and regulations governing proper police conduct."[15] However, the Plaintiff does not allege any specific facts to support these allegations. Vague and ambiguous allegations alone are not sufficient to meet the standards of Rule 12(b)(6) or Monell.

---

[12] Id. at ¶ 37.
[13] Id. at ¶ 82.
[14] Id. at ¶ 83.
[15] Id. at ¶ 44.

**Alleged Evidence of Deliberate Indifference**

The Plaintiff lists several cases, reports, and court orders that he suggests demonstrate Detective O'Malley's misconduct and which he claims illustrates Boston Police Department's pattern and practice of deliberate indifference. Those cases are broken down as follows:

(1) Commonwealth v. Jones[16]

    a. Plaintiff alleges that no physical evidence connected Jones to the crime, and the conviction was based on eye witness's testimony only.[17] In 2022, a motion for new trial was granted.[18] Plaintiff alleges that the court in 2022 noted, among other things, that Detective O'Malley facilitated flawed identifications.[19]

(2) Commonwealth v, Gaines[20]

    a. The Plaintiff alleges that the District Attorney did not provide a key witness' recantation to Gaines for more than 25 years.[21] In 2021, the court granted a motion for new trial.[22] Plaintiff points to the Court's 2021 findings that Detective O'Malley's was accused of pressuring witnesses to provide false testimony in *other* cases.[23]

    b. The Plaintiff also notes that Detective O'Malley was suspended without pay for filing a false police report related to a 1974 incident whereby his partner was injured by another BPD Officer.[24]

---

[16] Id. at ¶ 60.
[17] Id.
[18] Id.
[19] Id.
[20] Id. at ¶ 61.
[21] Id.
[22] Id.
[23] Id.
[24] Id. at ¶ 62.

(3) Carol Stuart Investigation[25]

    a. The Plaintiff next alleges that Detective O'Malley was a lead detective in the investigation into the murder of Carol Stuart and her unborn child, and that federal investigators looking into the Stuart investigation "concluded that Detective O'Malley pressured witnesses to give false information, threatened witnesses, and included false coerced information in search warrant affidavits, even though he knew the witnesses intended to recant the statements."

    b. He supports this allegation by pointing to a 2013 Order on Motion for New Trial in Commonwealth v. Gaines, 7584-CR-91203, and a 1990 Report by the Attorney General.[26]

(4) Cox v. O'Malley[27]

    a. The Plaintiff alleges that, in 1993, Detective O'Malley was sued by Leroy Cox for executing an allegedly illegal search warrant in connection with the Carol Stuart investigation.[28] The Plaintiff cites to a letter that Detective O'Malley wrote to his attorney regarding a witness who "was afraid to come to the [homicide] unit because he believed that he had active warrant[s] on him."[29] The Plaintiff alleges that another officer was told to inform the witness that homicide detectives would assist him in removing the defaults.[30] Plaintiff further alleges that Detective O'Malley executed a search warrant at Joey

---

[25] Id. at ¶¶ 63-64.
[26] Id.
[27] Id. at ¶ 65.
[28] Id.
[29] Id.
[30] Id.

10

Bennett's home and found "a white powder which later was analyzed as cocaine" in Joey's bedroom and arrested him.[31]

(5) <u>Commonwealth v. William Bennett</u>[32]

    a. Also in connection with the Stuart investigation, the Plaintiff alleges that in 1993, the SJC found that the defendant in that case had presented "a reasonable basis for finding … that certain [of O'Malley's] statements in the affidavit in support of the issuance of [a] search warrant . . . were false."[33]

(6) <u>Veda Bennett v. O'Malley</u>[34]

    a. Here, again arising from the Carol Stuart case, the Plaintiff alleges that in 1993 Veda Bennett brought another lawsuit against the City and Detective O'Malley.[35] In that lawsuit, the plaintiff alleged that Detective O'Malley used drugs found during the execution of a search warrant to threaten Jenkins with imprisonment and loss of custody of her children to coerce her into disclosing a suspects whereabouts.[36] The complaint alleges that the "white powder" was eventually found not to be cocaine and the drug charges were dismissed.[37]

---

[31] <u>Id</u>.
[32] <u>Id</u>. at ¶ 66.
[33] <u>Id</u>.
[34] <u>Id</u>. at ¶ 67.
[35] <u>Id</u>.
[36] <u>Id</u>.
[37] <u>Id</u>.

(7) Attorney General and St. Clair reports.[38]

    a. Finally, the Plaintiff cites to a 1990 report from the Massachusetts Attorney General "accusing Detective O'Malley of threatening, intimidating, and coercing witnesses into providing false testimony."[39]

    b. The Plaintiff also cites the 1992 report of outside investigators, commonly called the "St. Clair report," alleging failures in training, supervision, and discipline by the BPD.

The allegations related to each of these cases, even if true, fail to show a history of constitutional violations by *the City* that rises to the level of "supervisory encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate indifference." Lipsett, 864 F. 2d at 902 (1988). This Court has previously found that "[f]ive cases of alleged police misconduct without discipline over five years does not sufficiently allege a pattern of constitutional violations to show that the municipality knew or should have identified a general or persistent deficiency in officer training or supervision." Qualls v. Roache, No. 1:23-CV-10435-GAO, 2024 WL 1333610, at *2 (D. Mass. 2024).

### The Alleged *Monell* Supports Occurred After the Plaintiff's Conviction

The Plaintiff was arrested for the murder of Efrain DeJesus in 1984, and was convicted in 1986.[40] He alleges that the City of Boston was deliberately indifferent to Det. O'Malley's alleged misconduct, and is therefore liable for a Monell violation. He further alleges that the multitude of cases and reports cited above were sufficient to put the City on notice. However, one common

---

[38] Id. at ¶¶ 64,71-72
[39] Id. at ¶ 64.
[40] Id. at ¶¶ 25, 41.

factor in *each* of the above cases and reports precludes that arguments – each incident alleged above occurred *after* 1986 – from as early as 1990 to as late as 2022.

The cases cited fail to support the Plaintiff's claims that the City was on notice of the purported misconduct, and was therefore deliberately indifferent. As such, the Plaintiff has failed to allege facts sufficient to show a "persistent failure to discipline that demonstrates the existence of a custom or policy of Boston." Barker, 795 F. Supp. 2d at 124.

### B. Count 7 – Negligent Supervision

### Lack of Proper Presentment

Under the Massachusetts Tort Claims Act ("MTCA"), public employers are "liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. Laws c. 258, § 2. Prior to bringing suit under the MTCA against a city, a claimant must present his claim in writing to the mayor, city manager, corporation counsel, city solicitor, or city clerk within two years of the ***date of loss***. Mass. Gen. Laws c. 258, § 4. (emphasis added.)

> The purpose of the presentment requirement is to ensure that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.

Rodriguez v. City of Somerville, 472 Mass. 1008, 1010–11 (2015) (internal quotations omitted). Presentment is a "condition precedent to the assertion of a right created by the act." George v. Town of Saugus, 394 Mass. 40, 41–42 (1985). Furthermore, courts have emphasized that the MTCA requires "strict compliance" with the "proper party noticed" components of Mass. Gen. Laws c. 258, § 4. Martin v. Com., 53 Mass. App. Ct.

526, 528–29 (2002) (internal quotations omitted); *see also* Krasnow v. Allen, 29 Mass. App. Ct. 562, 567 (1990) (acknowledging that the "strict compliance" requirement is "often harsh").

A "demand letter" was mailed to the First Assistant Corporation Counsel/Chief of Litigation on May 3, 2023 – it was not delivered to any of the individuals specifically authorized in § 4. Accordingly, because Plaintiff cannot show that he was in "strict compliance" with the proper party requirements under the MTCA, Count 7 against the City fails as a matter of law. *See* Martin, 53 Mass. App. Ct. at 528–29.

### C. Count 12 – *Respondeat Superior*

Finally, Count 12 of the Plaintiff Complaint, alleges that "Defendant City of Boston is liable as a principal for all torts committed by their officers and employees."[41] It is well settled that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort… [I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (1978). As such, Count 12 against the City of Boston must be dismissed.

### Conclusion

For the reasons set forth herein, the City respectfully requests that this Honorable Court grant its motion, dismiss all counts of the Plaintiff's Complaint asserted against it, specifically Counts 1 (Monell), 7 (*Negligent Supervision*), and 12 (*Respondeat Superior*) and grant such other and further relief as it deems just and proper.

---

[41] Id. at ¶ 142.

| | |
|---|---|
| Date:  05/09/2024 | Respectfully submitted,<br><br>**CITY OF BOSTON,**<br><br>By its attorneys:<br>ADAM CEDERBAUM<br>Corporation Counsel<br><br>/s/ Adam D. Johnson<br>Adam D. Johnson (BBO#679142)<br>Nicole E. Gemba (BBO#707216)<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>City Hall, Room 615<br>Boston, MA  02201<br>(617) 635-4097 (ADJ)<br>(617) 635-4048 (NEG)<br>adam.johnson@boston.gov<br>Nicole.gemba@boston.gov |

**Certificate of Service**

I, Adam Johnson, hereby certify that on May 9, 2024 a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

/s/ Adam D. Johnson.
Adam D. Johnson

**7.1 Certification**

I, Adam Johnson, hereby certify that I conferred with counsel for the Plaintiff via telephone conference on May 9, 2024 in an effort to resolve or narrow the issues raised herein. The parties were unable to resolve or narrow the issues.

/s/ Adam D. Johnson.
Adam D. Johnson

15