## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH JABIR POPE,<br>Plaintiff,<br><br>v.<br><br>CITY OF BOSTON; and Former Boston Police Detectives and/or Officers, PETER J. O'MALLEY, JAMES T. CURRAN & ROBERT FLYNN, *in their individual capacities*, as well as-yet-unknown Boston Police Officers and/or Supervisors JOHN and JANE DOES 1 THROUGH 20, Defendants. | Civil Action No. 1:24-CV-10980-DJC |

## PLAINTIFF JOSEPH JABIR POPE'S OPPOSITION TO DEFENDANT CITY OF BOSTON'S
## <u>MOTION TO DISMISS</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT BACKGROUND ........................................................................... 2

      A.    Procedural History ................................................................................. 2

      B.    Factual Allegations ................................................................................ 3

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 6

      A.    Mr. Pope's *Monell* claim is adequately pled and should not be dismissed ............ 6

      B.    Mr. Pope has satisfied the presentment requirements of the Massachusetts
            Tort Claims Act ..................................................................................... 12

      C.    Respondeat superior is a valid theory under state law ........................................ 15

V.    CONCLUSION ................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accion v. Hernandez,*
    367 F.3d 61 (1st Cir. 2004)....................................................................................6

*Amaral v. City of Fall River,*
    2022 WL 16752885 (2022)....................................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................5, 6

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
    520 U.S. 397 (1997)................................................................................................6

*Bellanti v. Bos. Pub. Health Comm'n,*
    70 Mass. App. Ct. 401 (2007)..............................................................................14

*Bochart v. City of Lowell,*
    989 F. Supp. 2d 151 (D. Mass. 2013) ....................................................................7

*Bordanaro v. McLeod,*
    871 F.2d 1151 (1st Cir. 1989)..............................................................................7, 9

*Commonwealth v. Pope,*
    489 Mass. 790 (2022) ............................................................................................4

*Connick v. Thompson,*
    563 U.S. 51 (2011)..............................................................................................6, 7

*Echavarria v. Roach,*
    2017 WL 3928270 (D. Mass. Sept. 7, 2017) ........................................................11

*Haley v. City of Bos.,*
    2013 WL 4936840 (D. Mass. Sept. 12, 2013) ........................................................7

*Haley v. City of Bos.,*
    657 F.3d 39 (1st Cir. 2011)............................................................................. passim

*Lopez v. Lynn Hous. Authy.,*
    440 Mass. 1029 (2003) ........................................................................................14

*Martin v. Com.,*
    53 Mass. App. Ct. 526 (2002)....................................................................12, 13, 15

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978)....................................................................................... passim

*Perrot v. Kelly*,
    2023 WL 2939277 (D. Mass. Feb. 15, 2023) ..........................................................11

*Qualls v. Roache*,
    2024 WL 1333610 (D. Mass. 2024) ...................................................................11

*Regis v. City of Bos.*,
    2020 WL 2838862 (D. Mass. June 1, 2020) ..........................................................7

*Rodriques v. Furtado*,
    950 F.2d 805 (1st Cir. 1991)...............................................................................7

*Vasys v. Metropolitan Dist. Commn.*,
    387 Mass. 51 (1982) ..........................................................................13, 14, 15

**Statutes**

42 U.S.C. § 1983 ................................................................................ *passim*

G.L. c. 258, § 4 ...................................................................2, 12, 13, 15

**Other Authorities**

Fed.R.Civ.P. 8 ..................................................................................5, 12

Fed.R.Civ.P. 12(b)(6)........................................................................5

## I.    <u>INTRODUCTION</u>

Plaintiff Joseph Jabir Pope ("Mr. Pope" or "Plaintiff") respectfully requests that the Court deny Defendant City of Boston's ("City's") motion to dismiss in its entirety. *See* Def. City of Boston's Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem."), Dkt. 22. For the following reasons, Mr. Pope's claims in Counts I, VII, and XII are pled sufficiently and properly. Accordingly, the City's motion to dismiss those claims should be denied.

*First*, Count I of the Complaint alleges that the City of Boston and the Boston Police Department ("BPD") had a policy and practice for many years, including in 1984, of committing various constitutional violations against criminal defendants. The Complaint further asserts that this policy and practice was the moving force behind Mr. Pope's wrongful conviction and nearly 38-year wrongful incarceration due to having no legitimate oversight, training, or discipline of police officers and other personnel of the BPD. Specifically, over the last half-century, dating back to the 1970s, the City, BPD, and certain police officers, including lead Detective Peter J. O'Malley, have repeatedly violated the constitutional rights of criminal defendants by, among other things, fabricating, withholding, and destroying evidence, inducing false testimony, suppressing statements that were legally required to be provided to the defense, deliberately failing to investigate the actual perpetrators, assisting potential exculpatory witnesses in being unavailable to testify, and engaging in improperly suggestive identification procedures. The allegations in the Complaint setting forth this shocking, long-standing pattern of constitutional violations easily satisfy Mr. Pope's burden at this early stage of the proceedings to state a "plausible" claim for relief.

*Second*, pursuant to Count VII of the Complaint, Mr. Pope made a proper presentment of his claim for negligent training and supervision to the City, as it was delivered to the proper public

official in accordance with G.L. c. 258, § 4.

*Third*, Count XII of the Complaint sufficiently alleges that the City is liable for the torts committed by its officers and employees under *state law*, and the City does not make any argument to refute that. Instead, the City's three-sentence paragraph addressing this Count is entirely misplaced, as it wrongly focuses on federal law—42 U.S.C. § 1983—despite the fact that the Complaint makes clear that Count XII alleges a state-law claim.

## II.   **RELEVANT BACKGROUND**

### A. Procedural History

In 1985, the jury in the initial trial against Mr. Pope did not reach a verdict. Compl. ¶ 7, n.2, Dkt. 1. Following a second trial in 1986, Mr. Pope was convicted on one count of first-degree murder and one count of armed robbery, for which he was sentenced to life imprisonment without the possibility of parole and eight to ten years, respectively. *Id.* ¶ 25. Nearly four decades later, in 2020, Mr. Pope filed a motion for a new trial based, in part, on newly discovered *Brady* material demonstrating that the sole witness against him had given undisclosed inconsistent accounts of the events leading to his conviction. On June 7, 2022, the Supreme Judicial Court reversed Mr. Pope's convictions. *Id.* ¶ 8 (citing *Commonwealth v. Pope*, 489 Mass. 790 (2022)). On October 24, 2022, the Suffolk County Superior Court vacated Mr. Pope's convictions, and the Suffolk County District Attorney's Office *nolle prossed* the case. *Id.* ¶ 9.

As relevant to the instant case, on May 3, 2023, counsel for Mr. Pope sent a presentment letter in accordance with G.L. c. 258 § 4, via federal express mail, to Susan Weise, First Assistant Corporation Counsel and Chief of Litigation of the City of Boston Law Department. *See id.* ¶ 18. On July 18, 2023, counsel for Mr. Pope emailed Ms. Weise, attaching the presentment letter, to ask for a meeting to discuss Mr. Pope's claims. This meeting took place at City Hall on September

5, 2023.  Thereafter, the parties engaged in discussions via telephone and email for months, and Mr. Pope provided discovery upon request.  Despite this lengthy back-and-forth, Mr. Pope never received a written denial or offer of settlement.  On April 17, 2024, Mr. Pope filed the instant Complaint.

### B.  Factual Allegations

On May 23, 1984, Efrain DeJesus ("ED") was murdered on the first floor of a residence located at 15 Nonquit Street in Dorchester, Massachusetts.  *Id.* ¶ 3.  At the time of the murder, Mr. Pope was engaging in a drug transaction on the second floor of the residence with ED's brother, Benny DeJesus ("BD"), who was Mr. Pope's drug supplier.  *Id.* ¶¶ 29–30.  Mr. Pope, having nothing to do with the murder, refused to help BD remove drugs and paraphernalia from the house before the police arrived and thereafter left the residence.  *Id.* ¶¶ 31–33.  Mr. Pope was arrested two days later and was ultimately prosecuted and convicted of murder in the first degree, on a felony murder theory, and armed robbery.  *Id.* ¶¶ 7, 41.  Mr. Pope's conviction rested solely on the fabricated testimony of BD—the Commonwealth's chief witness at both trials—that Mr. Pope was a participant in a plan to rob both brothers.  *Id.* ¶¶ 5, 27.  There was no physical or forensic evidence connecting Mr. Pope to the murder.  *Id.* ¶ 4.  The gun used to kill ED was later found on another person.  *Id.* ¶ 43.

According to a memorandum by Assistant District Attorney Robert L. Goodale (the "Goodale Memo"), which was not turned over to the defense prior to either trial, BD initially claimed that Mr. Pope was downstairs at the time of the murder, Detective O'Malley did not believe BD's story, Detective O'Malley believed BD was a drug dealer, and packets of cocaine were allegedly found at the scene of the crime on the second floor of the residence.  *Id.* ¶¶ 36–37, 50.  BD's statements from the night of the murder detailed in the undisclosed Goodale Memo vary

from BD's accounts later in the case, including at the probable cause hearing and at the trials, where BD alleged that Mr. Pope robbed BD at gun point on the second floor, taking money and cocaine from him. *Id.* ¶¶ 5, 38; *see Commonwealth v. Pope*, 489 Mass. 790, 801–05 (2022) (listing myriad inconsistencies). Members of the BPD never conducted an investigation to determine the truth of BD's statements because they had an agreement with BD to fabricate evidence to support a theory of felony murder. *Id.* ¶¶ 39, 44–49.

In return for BD's fabricated account of events, the BPD declined to investigate or prosecute BD for crimes related to his drug dealings and/or caused the drug evidence apparently found at the residence on the night of the murder to disappear. *Id.* ¶ 45. Members of the BPD, including Detective O'Malley, Detective James T. Curran, and Officer Robert Flynn, lied at various stages of the proceedings about not having found drugs at the crime scene and about BD's fabricated evidence of an armed robbery. *Id.* ¶ 46. Moreover, the BPD failed to adequately investigate the actual perpetrator or his accomplice despite being told specifically by Floyd Hamilton, Mr. Pope's co-defendant, that he had witnessed Ricardo Tisdale shoot ED with a shotgun. *Id.* ¶¶ 43, 58. The shotgun that killed ED was found in Tisdale's possession one week after the crime. *Id.* ¶ 43.

The BPD also failed to maintain the file for the murder investigation, as the 911 recordings and notes of BD's interview on the night of the murder were destroyed or otherwise not produced to the defense. *Id.* ¶ 54. Although BD had provided police with several statements on the night of the murder, which later proved to be exculpatory, the BPD detectives did not reveal these statements either in pretrial discovery or at trial. *Id.* ¶¶ 7, 54.

The BPD's misconduct in Mr. Pope's case was part of its policy and practice, dating back to at least the 1970s, to fabricate, withhold, and destroy evidence, induce false testimony, suppress

statements that were legally required to be provided to the defense, deliberately fail to investigate the actual perpetrators, assist potential exculpatory witnesses in being unavailable to testify, and engage in improperly suggestive identification procedures. *Id.* ¶ 1.  Specifically, in the 1970s, Detective O'Malley—the lead detective in Mr. Pope's case—engaged in a spree of misconduct, including knowingly facilitating flawed identifications in *Commonwealth v. Jones*, 7584-CR-95364; manipulating a witness, David Bass, to lie in *Commonwealth v. Gaines*, 7584-CR-91203; and filing a false police report to cover up an incident where Detective O'Malley's partner, Detective Arthur Linsky, was injured by another BPD officer. *Id.* ¶¶ 59–62.  Years later, in the Carol Stuart investigation, Detective O'Malley threatened, intimidated, and coerced witnesses into providing false testimony, which instigated a slew of civil actions against him for such conduct. *Id.* ¶¶ 63–67.  In light of all of this evidence, in addition to the evidence presented in the *Haley* case (discussed further below) and the St. Clair report, it is clear that officers of the City of Boston regularly withheld and fabricated evidence, leading to botched investigations and wrongful convictions for many years, including in the 1980s, and that officers were either trained to violate rights or were so poorly trained as to their obligations that the BPD knew or should have known of this pattern and did not stop it. *Id.* ¶¶ 68, 70–73.

## III.   LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), a court accepts as true the well-pled facts alleged in the Complaint and draws all reasonable inferences in the plaintiff's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "[D]etailed factual allegations" are not necessary; rather, the complaint need only "contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  There is no heightened pleading standard for civil rights cases.  *See Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66–67 (1st Cir. 2004).

## IV.  ARGUMENT

### A.  Mr. Pope's *Monell* claim is adequately pled and should not be dismissed.

Mr. Pope alleges that the City of Boston and the BPD had a policy and practice for many years, including in 1984, of committing various constitutional violations against criminal defendants and that this policy and practice was the moving force behind Mr. Pope's injuries due to no legitimate oversight, training, or discipline of police officers and other personnel of the BPD. Compl. ¶¶ 77–86.  Despite the City's half-hearted argument that these allegations are not supported by sufficiently specific facts, *see* Def.'s Mem. at 8, it cannot be seriously disputed that Mr. Pope's Complaint adequately states a "plausible" claim that the City was deliberately indifferent to the various constitutional violations committed by the BPD for decades.

Generally, a municipality "may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978)).  The plaintiff bears the burden of (1) identifying "a municipal 'policy' or 'custom' that caused the plaintiff's injury" and (2) demonstrating that a municipality, "through its deliberate conduct," was the "'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403-04 (1997) (emphasis omitted).  At the motion to dismiss stage, this "moving force" can be shown through conduct that was "encouraged,

or at least tolerated," by the police department. *Haley v. City of Bos.*, 657 F.3d 39, 53 (1st Cir. 2011).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61; *see Bochart v. City of Lowell*, 989 F. Supp. 2d 151, 154 (D. Mass. 2013). "Liability for a city's policy or custom may, under limited circumstances, extend to a city's failure to properly train employees." *Regis v. City of Bos.*, 2020 WL 2838862, at *2 (D. Mass. June 1, 2020) (internal quotation marks and citation omitted). "A municipality may set a policy bringing it within the scope of section 1983 liability if it fails to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Haley v. City of Bos.*, 2013 WL 4936840, at *5 (D. Mass. Sept. 12, 2013) (internal quotation marks, citations, and alterations omitted); *see Haley*, 657 F.3d at 52 ("Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.").[1] "A municipality may be deemed to have been deliberately indifferent to a constitutional right where a municipal policymaker disregards a known or obvious risk of a violation of that right." *Haley*, 2013 WL 4936840, at *5, n.9 (internal quotation marks and citation omitted). To meet this burden, a plaintiff "must show either a pattern of similar constitutional violations or that need for more or different training is so obvious and the inadequacy is so likely to result in the violation of constitutional rights." *Regis*, 2020 WL 2838862, at *2 (internal quotation marks and citation omitted).

---

[1] The same standard is applied to claims for failure to adequately supervise or discipline. *See Rodriques v. Furtado*, 950 F.2d 805, 813 (1st Cir. 1991); *Bordanaro v. McLeod*, 871 F.2d 1151, 1158-59 (1st Cir. 1989).

Here, the Complaint alleges that the deprivations of Mr. Pope's constitutional rights were caused by the policies, practices, and customs of the City and the BPD, as well as by the actions of the final policymaking officials for the City and the BPD, and further, that the City promulgated written and unwritten rules, regulations, policies, and procedures related to police investigations that were implemented by its employees and agents, including the individual defendants and currently unknown defendants.  Compl. ¶¶ 77–81.  Moreover, the Complaint alleges that the City had notice of widespread practices by its officers under which individuals suspected of criminal activity, such as Mr. Pope, were routinely deprived of exculpatory evidence and were falsely implicated in crimes, including through the fabrication of evidence; that these practices were so well-settled that they constituted the *de facto* policy of the City; and that municipal policymakers "exhibited, at minimum, deliberate indifference to the problem, thereby effectively ratifying it." *Id.* ¶¶ 82, 84.  Lastly, the Complaint alleges that the City and the BPD directly encouraged and were thereby the "moving force" behind the violations of Mr. Pope's constitutional rights by failing to adequately supervise, train, and discipline their officers and employees who committed these violations.  *Id.* ¶ 83.

More specifically, the Complaint alleges that the BPD knew—both before and after its misconduct towards Mr. Pope—that Detective O'Malley lied and caused lies (and thus represented a known pattern of misconduct) and that the BPD knew of its own widespread custom of unconstitutional practices beyond Detective O'Malley's misconduct.  *Id.* ¶¶ 59–73.  As alleged in the Complaint, a judge in this district concluded that the types of allegations made in Mr. Pope's Complaint dating back to the 1970s would, if true, "support a finding that constitutional violations were well settled and widespread, such that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Id.*

¶ 70 (quoting *Haley*, 2013 WL 4936840, at *6).

To further support these allegations, Mr. Pope cites to not only specific instances of misconduct in his own case but to six other cases (including *Haley*) spanning from the 1970s through present day; a 1974 disciplinary proceeding involving the lead detective in this case, Detective O'Malley; the 1990 report by the Massachusetts Attorney General regarding Detective O'Malley's misconduct in the infamously botched Carol Stuart investigation; and a 1992 report by the Management Review Committee regarding the BPD's grossly inadequate training, supervision, and discipline, all of which demonstrate a pattern of constitutional violations similar to the ones alleged in Mr. Pope's case. Compl. ¶¶ 60–73. Although some of these instances of misconduct post-date Mr. Pope's case, such "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Bordanaro*, 871 F.2d at 1166–67. Specifically, none of the reports cited in the Complaint, nor the allegations in various civil suits brought after Mr. Pope's conviction, suggest that the BPD first adopted a custom of violating civil rights sometime after his conviction. In fact, it shows just the opposite—the later misconduct confirms that what happened to Mr. Pope was the product of a custom and practice, and the result of deliberate indifference, by the BPD (and not just a one-off incident by a rogue cop).

Mr. Pope's allegations against the City largely mirror those approved as sufficient by the First Circuit in *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011). In *Haley*, the plaintiff brought a section 1983 action against the City for the non-disclosure of certain inconsistent statements by the key prosecution witnesses in the case, alleging claims under *Monell*, among others, that his wrongful conviction and related injuries were due to the BPD's "standing policy that was itself unconstitutional" and the City's failure "to train its personnel in their evidence-disclosure

obligations despite notice of persistent and ongoing violations." *Haley*, 657 F.3d at 45, 51.  In holding that the *Monell* claim was adequately pled at the motion to dismiss stage, the First Circuit explained:

> Evaluating the plausibility of a pleaded scenario is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  Disclosure abuses are a recurring problem in criminal cases, and the BPD's failure to disclose the sisters' [exculpatory] statements is wholly unexplained.  Given the volume of cases involving nondisclosure of exculpatory information and the instant failure to disclose statements that clearly would have undermined the prosecution's theory of the case, we think that the municipal liability claims pleaded by Haley step past the line of possibility into the realm of plausibility.  Indeed, if the detectives intentionally suppressed the discoverable statements even when such activity was condemned by the courts (as Haley has alleged), it seems entirely plausible that their conduct was encouraged, or at least tolerated, by the BPD.  Although couched in general terms, Haley's allegations contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery.

*Id.* at 52–53 (internal quotation marks and citations omitted).

The Court should reach the same result here.  Notably, the City does not cite to *Haley* or otherwise argue why its reasoning would not govern here.  It is clear why: *Haley* is controlling as to the treatment of *Monell* claims at this early pleadings stage, and the City has no grounds to distinguish it.  Indeed, Mr. Pope's *Monell* claim, which incorporates specific instances of constitutional violations by the BPD in various proceedings dating back to the 1970s and continuing for decades thereafter, is *even stronger* than the ones presented in *Haley*, in which the complaint did not identify any particular cases or other specific instances of misconduct outside Haley's criminal case.  *See id.* at 53.  Even without referring to these specific instances of misconduct, Mr. Pope's allegations "couched in general terms . . . contain sufficient factual content to survive a motion to dismiss and open a window for pretrial discovery," as the First Circuit in *Haley* has so held.  *Id.*

Mr. Pope's allegations against the City also largely mirror those approved as sufficient by this Court in *Perrot v. Kelly*, 2023 WL 2939277 (D. Mass. Feb. 15, 2023), *report and recommendation adopted*, 2023 WL 2607763 (D. Mass. Mar. 23, 2023), and *Echavarria v. Roach*, 2017 WL 3928270 (D. Mass. Sept. 7, 2017). In *Echavarria*, for example, the court held that the plaintiff's *Monell* claim against the City of Lynn—containing allegations that are virtually identical to the allegations set forth in Mr. Pope's Complaint—were "sufficient to survive the motion to dismiss," particularly since "similar allegations were found to be sufficient in *Haley*[.]" *Echavarria*, 2017 WL 3928270, at *5.

The City's reliance on *Qualls v. Roache*, 2024 WL 1333610 (D. Mass. 2024) is inapposite. In that case, the court held that the plaintiff's "allegations [we]re too general to meet the stringent standard required to establish municipal liability under Section 1983," reasoning that (a) the complaint's five cited cases of "alleged police misconduct without discipline" over a five-year period "d[id] not sufficiently allege a pattern of constitutional violations" and (b) the allegations in those five cases "[we]re not akin to the plaintiff's allegations." *Qualls*, 2024 WL 1333610, at *2. In making this determination, the court specifically pointed out that the five cited cases "alleged that officers intentionally lied to secure convictions and suppressed likely exculpatory evidence" but that the plaintiff's complaint "d[id] not allege particular acts of willful misbehavior by officers that were effectively countenanced by the City of Boston." *Id.* Here, however, Mr. Pope's complaint *does* allege "particular acts of willful misbehavior by officers" in Mr. Pope's criminal case "that were effectively countenanced by the City of Boston" and cites to specific cases, proceedings, and other instances of misconduct over the course of decades, *not just five years*, each setting forth allegations that are either the same or very similar to Mr. Pope's allegations. These allegations are more than sufficient at this early pleadings stage prior to

discovery.  Finally, contrary to the City's contention, some of the alleged misconduct—including, for example, disciplinary proceedings against Detective O'Malley—dates back as early as the 1970s, which would effectively put the City on notice.[2]

Therefore, the Complaint adequately describes the asserted basis of *Monell* liability against the City, and as such, the City's motion as to Count I should be denied.

### B.  Mr. Pope has satisfied the presentment requirements of the Massachusetts Tort Claims Act.

Mr. Pope alleges a claim for negligent training and supervision against the City of Boston under Count VII of the Complaint.   The City does not contest the merits of this claim, contending only that the claim cannot proceed because of the manner of presentment.  Def.'s Mem. at 13–14. The City's contention is baseless and should be rejected.

General Laws c. 258, § 4 provides, in pertinent part, that "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless [a] claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . ."  In the case of a city, presentment of a claim is deemed sufficient if presented to "corporation counsel."  G.L. c. 258, § 4.  "An oft-recited proposition" (and argued by the City here) "is that presentment must be made in strict compliance with the statute."  *Martin v. Com.*, 53 Mass. App. Ct. 526, 528 (2002) (internal quotation marks and citation omitted).  However, Massachusetts state courts have held that "no

---

[2]  The City misreads Rule 8 of the Federal Rules of Civil Procedure, which requires only that a Complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rather, the City's incorrect approach would seem to require Mr. Pope, at this early stage, to lay out in detail the BPD's full misconduct including, for example, what was revealed during discovery in *Haley*, such as the director of training, Robert Wasserman, acknowledging that insufficient training was done on exculpatory and impeachment evidence (as is alleged here) and that the BPD Commissioner, Robert DiGrazia, was on notice of the faulty training.  None of this is required to be in the Complaint.  Instead, when Mr. Pope moves for summary judgment, the full scope of the known misconduct constituting a custom and practice of constitutional violations will include not only these facts (that are clearly documented in the *Haley* litigation and elsewhere) but additional misconduct which discovery will expose.

sharp criteria can be formulated to settle all questions about the proper officer for presentment," as the purpose of the presentment requirement, at bottom, is to ensure that the "official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.'" *Id.* at 529 (quoting *Lodge v. Dist. Atty. for Suffolk Dist.*, 21 Mass. App. Ct. 277, 283–84 (1985)). The provisions of General Laws c. 258 are to be construed "liberally for the accomplishment of the purposes thereof," allowing "plaintiffs with valid causes of action to recover in negligence against governmental entities in Massachusetts." *Vasys v. Metropolitan Dist. Commn.*, 387 Mass. 51, 57 (1982) (internal quotation marks and citation omitted).

Here, the City does not dispute that the presentment letter was timely or that the content of the presentment letter was sufficient; rather, the City's sole argument is that it was "not delivered to any of the individuals specifically authorized in [section four]." Def.'s Mem. at 14. This is flatly untrue. As the City expressly admits, the presentment letter was mailed to Susan Weise, First Assistant Corporation Counsel and Chief of Litigation, on May 3, 2023. As indicated by her title, Ms. Weise is part of the leadership team of the City of Boston Law Department and is, in fact, Corporation Counsel Adam Cederbaum's second-in-command. *See* "The Work Behind the Law Department," City of Boston, https://www.boston.gov/departments/law/work-behind-law-department (last visited May 30, 2024). To the extent the City suggests the presentment letter was defective in that it was not addressed to Adam Cederbaum specifically or one of the other officials set forth in General Laws c. 258, § 4, this argument elevates form over substance and is not supported by Massachusetts law. The Massachusetts Appeals Court recently held that "a letter addressed to the office of an official to whom presentment may be made, with the salutation 'Dear

Sir or Madam,' is adequate to meet the presentment requirement in the statute." *Amaral v. City of Fall River*, 2022 WL 16752885, at *1 (2022) (noting that the plaintiff's presentment letter was addressed generally to the City of Fall River Law Department). The Court reasoned that, "[a]lthough there is no case squarely stating this, it appears from the case law that letters addressed to the office of the relevant official have been used to meet the presentment requirement." *Id.* (citing *Est. of Gavin v. Tewksbury State Hosp.*, 468 Mass. 123, 125 (2014) ("[T]he estate's counsel sent a presentment letter pursuant to § 4 to the office of the Attorney General[.]")). Here, then, the fact that Mr. Pope's presentment letter is addressed *to a specific executive officer* from the Office of Corporation Counsel/Law Department—and not just the office itself—easily satisfies the presentment requirement.

Even if Ms. Weise was not the proper party to be served (she was), "there are two recognized exceptions under which a claim may go forward." *Bellanti v. Bos. Pub. Health Comm'n*, 70 Mass. App. Ct. 401, 406 (2007). *First*, "under the 'lulling' exception, the public employer will be estopped from asserting any defect in presentment, including failure to make presentment to the proper individual, if, during the conduct of the litigation and at a time when presentment still could have been made, the plaintiff was led to believe that presentment would not be an issue in the case." *Id.* at 406-07; *see Vasys*, 387 Mass. at 57 ("[T]the defendant's actions may have had the effect of lulling the plaintiff into believing that presentment would not be an issue in the case."). *Second*, "under the 'actual notice' exception, the presentment requirement will be deemed fulfilled if the plaintiff can show that, despite defective presentment, the designated executive officer had actual notice of the written claim." *Bellanti*, 70 Mass. App. Ct. at 407; *see Lopez v. Lynn Hous. Authy.*, 440 Mass. 1029, 1030 (2003).

Here, after service of the presentment letter, counsel for Mr. Pope and members of the City

of Boston Law Department, including Ms. Weise and Assistant Corporation Counsel Adam D. Johnson, met in person at City Hall and conferred via email and telephone for months thereafter to discuss Mr. Pope's claims. Mr. Pope's counsel even provided discovery materials to the City upon request. Based on these extensive interactions with the City of Boston Law Department, including with Mr. Cederbaum's second-in-command, it is clear that Corporation Counsel had actual notice of Mr. Pope's written claim. At a minimum, these interactions "may have had the effect of lulling [Mr. Pope] into believing that presentment would not be an issue in the case." *Vasys*, 387 Mass. at 57.

Finally, the City ignores the fundamental purpose of the presentment requirement, which is to "ensure[ ] that the responsible public official receives notice of the claim so that that official can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future." *Martin*, 53 Mass. App. Ct. at 529 (internal quotation marks and citation omitted). Because the provisions of General Laws c. 258 are to be construed "liberally for the accomplishment of the purposes thereof," *Vasys*, 387 Mass. at 57, Count VII should not be dismissed for defective presentment when the City (through the Office of Corporation Counsel) not only had the opportunity to investigate Mr. Pope's claims but did, in fact, investigate such claims over the course of many months prior to Mr. Pope filing the Complaint in this action.

The City's arguments as to Count VII are meritless, and the City's motion as to this Count should be denied.

### C. Respondeat superior is a valid theory under state law.

Although the City argues that a "municipality cannot be held liable under § 1983 on a

respondeat superior theory," *see* Def.'s Mem. at 14 (quoting *Monell*, 436 U.S. at 691), it is abundantly clear from a review of the Complaint that Mr. Pope is claiming that the City is liable for the torts committed by its officers and employees *under state law*, including, for example, negligent training and supervision.   Indeed, the very title of Count XII in the Complaint states that it is a "State-Law Claim," and there is no reference to section 1983 or any other federal law in the title itself or the allegations set forth under Count XII.  Compl. at 30.

Thus, Count XII of the Complaint sufficiently alleges that the City is liable for the torts committed by its officers and employees *under state law*, and the City's motion as to this Count should be denied.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Pope respectfully requests that the City's Motion be denied in its entirety.[3]

Dated:  May 31, 2024

                                              Respectfully submitted,

                                              JOSEPH JABIR POPE,

                                              By his attorneys,

                                              */s/ Joseph F. Savage*
                                              Joseph F. Savage (BBO # 443030)
                                              Zachary Weinstein (BBO # 709811)
                                              Goodwin Procter LLP
                                              100 Northern Avenue
                                              Boston, MA 02210
                                              Tel.: (617) 570-1000
                                              jsavage@goodwinlaw.com

---

[3]  Should this Court be inclined to dismiss the Complaint in whole or in part, Mr. Pope respectfully requests leave to amend.

Ashley Moore Drake (BBO # 694731)
Goodwin Procter LLP
1900 N Street NW
Washington, DC 20036
Tel.: (202) 346-4000
amdrake@goodwinlaw.com

Melissa Brumer (*pro hac vice*)
Jessica A. Vogele (*pro hac vice*)
Magdalin Peña Jimenez (*pro hac vice*)
Goodwin Procter LLP
620 Eighth Avenue
New York, NY 10018
Tel.: (212) 813-8800
mbrumer@goodwinlaw.com
jvogele@goodwinlaw.com
mpena@goodwinlaw.com

Jeffrey G. Harris (BBO # 679118)
PO Box 219
West Newton, MA 02465
Tel.: (617) 244-1989
jh@jeffharrislaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 31, 2024.

*/s/ Joseph F. Savage*
Joseph F. Savage